This is a recording of the meeting of the Board of Trustees of the University of California, San Diego, California. This is a recording of the meeting of the Board of Trustees of the University of California, San Diego, California. Secretary of Veterans Affairs, Mr. Atkinson. I'd like to report to Jimmy J. Brady, pairing on behalf of Mr. Jones. In this case, the question that we are asking the court to look at our examiners really narrow. And that is the question of what VA's obligation is under 3.158, subsection A, when it requests additional evidence from the veteran and their veteran's claimant fails to respond to that request, that claimant being demanded within a year, after a year. In this case, the court found that the leading message for the veteran was sufficient. We are asking the court to look at that and determine that that is actually not sufficient and that, in fact, that when VA communicates a request for evidence to the veteran, that that communication needs to be submitted to the veteran, preferably in writing. I was going to ask if there was one co-message and that was it. It appears sometimes messages, sometimes messages in the briefs. I actually was looking at that again this morning to try to determine what exactly the situation was. And I think that that's sort of the crux of the problem here in this case. And that's because it's not really clear whether a message was left with the person or whether a message was left at a phone number. It's not clear whose phone number that was. In this case, basically, what I can tell from the record is that there was a message left at a number that the veteran needed to return his claim filed. Counsel, it sounds to me like you may be, if not shifting, at least softening the decision you took in the brief. Because I understood your brief to argue it has to be in writing, in the notice.  What is your position? Our position is that it should be in writing. That it has to be in writing. That it should be in writing. There are a lot of shoulds. There are a lot of shoulds in the world. I could be doing a lot of other things that I'm doing, but besides putting that aside, what exactly now is your position of whether the regulation requires mandates in writing so that anything short of that is invalid? We've asked that it be in writing. And we've asked that it be in writing as being consistent with the regulatory structure being that requires other similar types of communications to be in writing. A veteran has to file a written application. VA has to give veteran notice of any decisions that may affect payment. It's not a decision. It's not written by them. I agree. What I'm saying is that the regulation supports an interpretation that that request needs to be in writing. It must be in writing. In order to preserve the veteran's rights. If that request is not communicated. In writing, it ensures that VA has complied with its obligation to communicate that to the veteran. That request. If the veteran knows what it is that he needs to submit or else his claim will be deemed abandoned. Because if that request is not given to that veteran, if that veteran doesn't receive that request, that request is not made adequately in writing to the veteran, then that affects the payment of benefits. And this is just what the statute would have referred to as 3.103. You think that we really can't consider the fact that this is unused as opposed to some other period of time before the veteran raised the question of what happened to my claim? I'm sorry. I guess I'm not. I don't understand. I'm really trying to understand whether this is an absolute rule. If it's not in writing, too bad. It doesn't matter how much time has passed. Nine years or 20 years or whatever. There's no obligation on the veteran to raise the question of whatever the question might have been. Whether the question is, did you need additional information? Did you ever create a dishonorable claim? Or whatever. The other picture, and this is what we're saying, is that it's on VA to make a request. But if VA determines that additional evidence is necessary, then they need to submit that request to the veteran in writing. At that point, the time stamp is running for that year in which if the veteran does not respond within a year, then the claim is deemed abandoned. If that request isn't made, then that claim remains pending and unadjudicated for all that time. If VA needs that evidence but doesn't adequately and doesn't submit that request to veterans, then, yes, it remains pending for nine years, 10 years, however long. But the ball is in VA's court at that point. It's their obligation to make the decision. On the basis of this case, and looking at the board's finding of J-12, that the veteran, according to the board, refused to provide a forwarding address after indicating he was leaving the country. So presumably, the option of sending something in writing would have been more hopeless than making a telephone call or a series of telephone calls. The court would have listened to these calls. But in the end, what's the VA supposed to do in that situation? Well, we would submit that there was a last-minute address on the record at that time, which appears to be in the subject of the draft. So even though he's saying, you can't reach me by mail and say, I'm leaving the country, they should go through the, at least according to him, ruthless step of sending out something in writing. Suppose there is no address. Suppose they take the sister out of the picture and say, you know, they say, well, give us your address and we'll send you anything. Of course, I need to know. Call me at this number. I don't have a fixed address. We're safe. I'm homeless. And in that, I think we, again, soften the situation to a certain degree. Because I think that, you know, if we're looking at all possible situations like that, I would say that in that situation, there at least needs to be something in writing or a sort of contact or something that shows that there was something communicated to the veteran. That the veteran understood that there was some kind of communication or contact made. So if they try to reach him by letter and by phone, but as far as they're concerned, as far as they can tell, neither reaches him, then the case stays open? Yes. So as long, so what you're saying is that they not only have to send him notice, but the notice has to be received by him. Actually, I believe it. What I would say is, and I was looking at the Irwin case, which is a CABP decision, and Irwin v. Kinseki, which is 23. That act is 128. And in that case, the question was whether it was a timely notice or a seal issue. And the statute that they looked at, and that was 7104E1, which talks about BVA decisions and what is required to get a better notice of a BVA decision. And that statute specifically says it needs to be sent to the last known address of the veteran. And so at that point, the VA can show. And in that case they looked at, it was sent to the last known address. It was not returned undeliverable by the post office. And at that point, the presumption of regularity is actually the VA gets that presumption. And so actually what I'm saying is, if they send it to the last known address, they've shown that in writing, they can show that they have submitted that request to the veteran directly to the veteran at his last known address. They have made every effort in that situation to communicate that request to the veteran. And even if he's been home for 20 years, what they should do is pick up the 20-year-old address? No. That can't be right. Right? If that's the last known address. So wouldn't that be putting an added burden on them? It's not just a burden, but it would be a kind of silly process to go through, right? They know perfectly well he's no longer at that address. Let's say that address was his known address. And he's been out of the military for 20 years. Well, and I guess an alternative is what I would ask the court to consider is the possibility that the VA needs to make every effort. I don't know if they have an old address that they know is an old address. There's no old address. But they have a current phone number. So they send a written notice to the old address. Is that good? I would say both ways. It doesn't return a deliverable. And if they can show that that was the best that they can do. Even if they have a current phone number. If they have a current phone number, then I would say, and like in this case, they could have called and tried to obtain a current address for him from that phone number. I mean, they did have a phone number. They did call, didn't they? Yes. I don't know what exactly happened. Yes, and Elizabeth can't tell. We have to go on. There's no indication that the veteran even received that request. And that, I think, is really the problem that we are here with and protecting. What does the VA have to do in this situation to make sure that the veteran received the request? With what the veteran did or didn't do. The problem precedes this notice issue. And that problem is he was given a file. He's on the file. The VA gave him this file. And he walked off with it. Presumably that is the VA's position. Well, do you have evidence to counter? I don't have evidence, either way. Well, he turned it in as he walked out. Yes, he said that he did not leave with it. And that also suggests that he knows that if he takes the file, that that will make it impossible for VA to make a decision. But he understands the consequences of taking that file with him, assuming that he even took the file. It's unclear what happened to the file. Well, you know, perhaps I'll have to look at this more sympathetically, if you weren't receiving benefits. But the real question is, was he entitled to benefits for those regularized for nine years or so? Yes. In fact, the exam that he had the day that he went to VA was a favorable exam and says that, in fact, he had a mental illness that originated during service. So he was mentioned, once he did come back in file again in 2002, he was awarded. The question is whether or not he should get it retroactively back to his initial claim. Could he be established in a mental illness? Yes. Yes, the VA examination at the time, in January of 1995, established that he was suffering from a mental illness that was related to service. So he wasn't entitled to benefits. But that is if he didn't abandon that earlier. Yes. That is if VA adequately complies with obligations to request additional evidence. Please turn. Thank you, Your Honor. May it please the Court, The issue in this case is the Department of Veterans Affairs' common-sense practice of developing claims with the cooperation of the veteran by requesting evidence by telephone, not solely by mail. There are no statutory or regulatory provisions that require that VA request evidence in writing. And, in fact, telephone communications allow a more efficient and personalized development of the claim. There's one thing that struck me a little odd about this. Normally, requesting additional evidence means we need you to come in for an examination or we need your medical records or we need... Well, this is... We need the file back. I mean, that's not really... I mean, I guess the file's contained in it, but it's not really quite spot-on to what we normally think of as a request for additional evidence. Do you think that this very much applies to all? Well, yes, Your Honor. It was... Evidence involves medical records, whether of the federal sort or of private records. And the request was made to Mr. Jones for something within his possession. The VA directive from that time period states that telephone communication or fax communication may be the preferable way to obtain medical records. The 38 CFR 2.158A simply states that if the VA requests evidence and the session is not to bond within one year, VA will consider the session to have abandoned the claim. And as you can see, it's telling VA, I don't want to pursue this claim anymore. And if the sessions were, therefore, correctly interpreted... Well, it assumes that the VA would ask you that assumption or apply whether you respond to it or not, or whether you seek the communication on whether or not it's a bond. I mean, it's not... It can be an assumed abandonment. Correct, Your Honor. There is the effect that VA could not adjudicate the claim without the records that were located in that claim file that was taken. Mr. Jones' household stated that it's not clear what happened to the claim file, but the Veterans Court made a finding that the Veterans took the file and that the court does not have jurisdiction to review the factual findings of the Veterans Court. Mr. Jones provided an address, and this is on page 1251 of the appendix attached to Mr. Jones' suit, provided an address and phone number, and that would be a phone number called. He described that he would be at that address through January 24th and that they called on January 20th following the January 19th medical examination. Section 3.158... Correct, Your Honor. What he had informed VA after the January 19th medical examination was that he would no longer be at that address, including the country, and refused to provide a forwarding address. The phone call is simply a more efficient, practical way to request evidence and develop a claim. There could be numerous requests back and forth with development over the phone through a personalized communication. To send a piece of mail each time one of those requests for a bit of evidence needs to be made would be burdensome and not efficient for the Veterans. In fact, according to Paralyzed Veterans of America, the Secretary of Veterans Affairs stated that in a survey, Veterans had responded that they've heard a telephone communication as part of the process. Let's assume he files a claim in 1993, and he goes in, and there's a bill working on it, an RRCA, and he walks out, he's got the file. Let's assume that the evidence is his way. He drops off the file and disappears. And then in 2002, he files a claim again, and given what they gave him, I think 100 percent, he disappears. On just those facts, what's the status of the 1993 claim? He narrates that he left the file, that he had left the file. Yeah, he left the file, or he was never given the file. He just walked out after the meeting with the RRO folks, and he's not seen again until 2002. What's the status of his 1993 claim? Mr. Jones, it would still be abandoned. He still would have abandoned his claim because he failed to respond to the telephonic request for evidence. Let's assume no telephonic request, no nothing. Nobody talks to anybody. He walks out in 1993 and isn't seen or heard again until 2002. Now what? If there was no request for evidence under 3.158A, then presumably it would be open. It would be still the ability to get an effective date. So it stays open regardless of how many years go by that the federal government doesn't make any effort to pursue the claim. Well, the federal government does have a responsibility to pursue the claim, but in that case, 3.158A, as you hear, would not apply to create abandonment. One point that Mr. Jones has made in his brief is the absence of affirmative abandonment and the claim stays open forever. That appears to be the case, Your Honor. As you understand. As I understand. In Section 358A, there's no language requirement that the request be in writing. In fact, a section that Mr. Jones referred a great deal to in his brief was Section 38 CFR 3.103. That section does require writing for a final decision. The fact that that inclusion of the in-writing language was in that section shows that VA acted intentionally and purposefully in the disparate exclusion of the in-writing requirement from 3.158. Again, in Paralyzed Sessions of America, the court stated that when a statute was silent as a form of notification, VA should retain flexibility to determine whether oral notice was the preferable way to provide this notice. That shows deference to the VA's experience in this matter and the reliability of modern technology. VA's directive also shows that VA has begun encouraging phone use, and that's its interpretation of its own regulation, which is entitled to deference. Mr. Jones referred a great deal in his brief to 38 CFR 3.103 and 38 U.S.C. 5.103, but these sections are irrelevant to the issue of abandonment by a failure to respond to a request for evidence. 3.103 is about written notice of decisions, which are further along in the claims process, and when a claim is abandoned, as we see here, there is no decision. There is a question that goes to the underlying facts, which is probably outside of our monopolies to address, but I'm still curious to know whether the facts, to the extent that they show, show. The court refers to unreturned phone calls. What's the evidence as to the call or calls? Your Honor, a call was made on January 20th, 1995, the day after the medical examination, and it appears that a message from the report of contact, which is that JA 1238, that a message was left. I believe the court, when it refers to multiple calls, is looking at a different report of contact that's dated in October of 1995, and that's at JA 1274. Does that appear to actually be a call in the Department of Veterans Affairs? I'm not sure. The records are expensive. But nevertheless, a single request for evidence is sufficient to make a request for evidence. What's your reaction to the suggestion that Bryson made some time back in this discussion that the call, the relevant call, was never really a request for evidence necessary to complete the application? I'm quoting from 38 CFR 3.109A. Because it was the application presumably was complete, he just walked off with the file. So when the phone call went in, he was not notified of evidence necessary to complete the application. Therefore, no phone call relevant to this case was ever made, and therefore, according to your earlier answer, this thing is still open. Well, first, there's a distinction between an application and a claim in this case. But the evidence that's discussed could be evidence of any kind. It could be any medical report of any kind. And therefore, the fact that this evidence was actually produced at the VA medical office does not make it in any way different from any other request for medical evidence. In fact, sometimes those requests for evidence are for military records, which we presume would have been perhaps in that file as well. But maybe the veteran has those, and maybe not. And they may ask for their own records. You're suggesting whatever was in that file was evidence relevant to the completion of the claim? Certainly not, because those were his recent examinations that were necessary for VA to determine whether he was entitled to any compensation. Without them, it had no doctor's examinations to rely upon. Also, since you guys referred to 38 U.S.C. 5103A as requiring written notice in this type of situation, it had no reference to written notice at all. And it actually only deals with an application for benefits. That would be earlier in the process. At that time, the veteran had to establish a well-rounded claim, and then VA would move into assisting him with developing the facts. So the section in 5103 actually refers to an earlier stage of the proceeding. Nevertheless, there is no reference to written notice. And the only reference to a mailing address in 5103C, as you pointed out in our brief, it only states that benefits cannot be denied due to the lack of a mailing address, which has been interpreted by commenters to refer to the problem of homelessness. Benefits may not be denied, but that has nothing to do with the issue of whether requests for evidence should be made by phone or to a mailing address. Throughout Mr. Dunn's brief, he seemed to be making an argument that 38 CFR 3.103 and 38 U.S.C. 5013 actually themselves contain 5103? 38 U.S.C. 5013. Both themselves contain a requirement that they request for evidence in writing. There's nothing about a request for evidence in either, and that was not raised below for the veteran's court. The court should not review it as the veteran has waived this issue and the court would like to restrict it if the proposed interpretation is not considered by the veteran's court of that regulation and statute. Further, the veteran's reply brief notes that he seems to argue that a point raised in motion for inciteration may be preserved or appealed. However, the court's decisions explaining our initial brief demonstrate that that is not the case. I just have a quick comment on the whole question of the fact that obviously the regulation does not specifically require writing. But this is a notice issue because ultimately once that request is made, then the veteran is put on notice that additional evidence is made or some action is required on his part or else the claim will be de-examined. A year later, then it becomes final and he loses any benefits during that period of time until a subsequent claim is filed. We would argue understanding the flexibility, obviously, particularly in the arena of disabled veterans and the fact that many veterans do not necessarily have addresses, but that we would assert that oral notice is not sufficient unless there is perhaps no other way to notify the veteran of this request and there is at least something in the record that shows or VA can show that that request was communicated to the veteran and that the veteran didn't receive actual notice. This is why we would ask the court to require notice and the written notice that that request needs to be in writing to at least preserve or ensure that that notice is satisfied, that the veteran gets that notice, that the VA does everything he can to preserve the notice and preserve that for the veteran. And obviously 5102, 5103, 3.103, the Secretary is correct that those do not specifically pertain to a request, but those pertain to decisions in the different stages of the adjudication process. If the 9-3 application were still open, would your client automatically get backdated on his disability claim? Yes, assuming that there was no abandonment issue. Assuming that Ed was in the scenario that you provided earlier where there was no request made for additional evidence or for the claim to file and he simply went to the examination and then at that point it would be left for VA to make a decision and it would remain open as long as it took VA to make a decision. Now, there are some of these cases that came up where VA just dropped the ball in 1949 and somebody comes in later. That's where it's my answer. That's correct. So if they had written to him after he had mentioned the telephone and the letter comes back not at this address, then it would stay open, is that right? Because there would have been no agreement whatsoever whether they wrote or didn't write. Perhaps it's irrelevant. Perhaps, although at the same time it really serves VA to provide that written notice. And that way it's more efficient. Send the notice. They preserve their obligation in that situation and we have some certainty with respect to the system and things it would not necessarily. But if it did come back indeliberable, then absolutely we have no indication that the request was actually communicated to the veteran, but we do have an indication that VA made every effort to communicate that request. And in that situation, I don't know factually what would happen. Obviously these are different factual scenarios. That would be less of a level four. Texting on the iPhone wouldn't do it, would it? Remains to be seen. Thank you. Thank you.